IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

SANDRA MALDONADO MORALES, et al.,

    Plaintiffs,

v.

DR. JORGE NOYA MONAGAS, et al.

    Defendants.

CIVIL NO. 08-1703 (GAG)

**OPINION AND ORDER**

    Pending before this court is Dr. Diego Solis' ("Dr. Solis") motion for summary judgment (Docket No. 135) and Sandra Maldonado's ("Plaintiffs") opposition (Docket No. 155). After reviewing the filings and the applicable law, Dr. Solis' motion for summary judgment is **DENIED**.

**I.    Background**

    Plaintiffs filed suit under diversity jurisdiction against various defendants, including the appearing co-defendant Dr. Solis, alleging medical malpractice, and seeking redress under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit 31, §§ 5141 & 5142. According to the complaint, Enrique Sanchez Vidal ("Sanchez") was admitted to the Presbyterian Community Hospital ("PCH") on May 17, 2007 for an elective laparoscopy procedure to remove his gall bladder. (Docket No. 1 at 4.) The surgery was performed by co-defendant surgeon Dr. Jorge Noya. (Id.) Due to complications, three more surgeries were performed afterwards.

    Sanchez was subsequently transferred to Auxilio Mutuo Hospital and was treated by Dr. Solis. (Id. at 6.) Dr. Solis performed a fourth surgery and found a perforated intestine with feces all over the abdominal area as well as a colon perforation and bile secretions. Instead of pancreatitis, Dr. Solis found acute peritonitis and a sepsis and performed four more unsuccessful surgeries. Plaintiffs allege that Dr. Solis performed a partial cholecystectomy when Sanchez was already suffering from a massive infection. On July 26, 2007, Sanchez died as a result of a multi-organ failure by sepsis and acute peritonitis.

**Civil No. 08-1703 (GAG)**

Plaintiffs argue that Dr. Solis failed to dictate detailed operative reports and was negligent in failing to take a careful history and physical exam of Sanchez. Plaintiffs also allege that Dr. Solis' malpractice caused them severe mental anguishes, economic damages, loss of gains, and medical expenses, amongst others. According to Plaintiffs, Dr. Solis' negligent acts caused Sanchez's death and as a result they seek that all defendants be held jointly and severally liable for damages in the amount of $27,690,000 plus interest and litigation costs.

On February 25th, 2010, co-defendant Dr. Solis, his wife, and their conjugal partnership, as well as Conjunta de Seguros de Responsabilidad Profesional Medico-Hospitalaria ("SIMED"), filed their motion for summary judgment. (Docket No. 135.) Plaintiffs submitted a report by their expert witness, Dr. Wingate, in which he analyzed Dr. Solis's actions towards Sanchez. Defendant Dr. Solis argues, among other things, that the expert's opinion fails to include any conclusions pertaining to the causal relation between his failures to use the wide drainage method and the patient's death.

In their opposition, Plaintiffs aver that, contrary to co-defendants' allegations, their expert witness clearly established that Dr. Solis's negligence contributed to Sanchez's death, and as such, co-defendants' request for summary judgment should be denied. (Docket No. 155.)

**II.   Standard of Review for Summary Judgment**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'posses[es] the capacity to sway the outcome of the litigation under applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (citations omitted).

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. The nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

**Civil No. 08-1703 (GAG)**

248 (1986). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestir Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

Under Local Rule 56, Defendants must file a statement of facts, set forth in numbered paragraphs, and supported by record citations. See P.R. Laws Ann. tit 32, App. III, R. 56. In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation . . . .

P.R. Laws Ann. tit 32, App. III, R. 56. Local Rule 56(e) further provides that a "court may disregard any statement of material fact not supported by a specific record citation to record material properly considered on summary judgment." P.R. Laws Ann. tit 32, App. III, R. 56(e). "These rules are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." Caban Hernandez v. Philip Morris USA, Inc., 486 F.3d 1, 8 (1st Cir. 2007). The First Circuit has held that when parties ignore the Local Rule, they do so at their peril. See Ruiz Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000).

**III.   Relevant Facts**

Upon reviewing the record, this court finds that Dr. Solis's Statement of Uncontested Facts ("SUF") ¶¶ 1, 5, and 7-9 are admitted by Plaintiffs, and as such, are deemed uncontested. Plaintiffs properly qualify ¶¶ 3, 4 and 6 and properly deny ¶¶ 2, 10 and 11. Based on the foregoing, the uncontested facts are as follow.

**Civil No. 08-1703 (GAG)**

On June 27, 2007 Sanchez was transferred to Auxilio Mutuo Hospital from PCH in catastrophic condition. (Docket No. 157-13 at 47.) Dr. Solis only looked over the patient's record before performing surgery on him. (Docket No. 156-6 at 8.) On the following day, Dr. Solis took the patient to the operating room and found a transverse colon perforation and bile leak. (Docket No. 137-2 at 2.) Hospital records show that Dr. Solis performed a bile duct reconstruction. (Docket No. 156-5 at 6.) After the surgery, Dr. Solis made brief post-operative notes on a notebook but there were inconsistencies as to what was actually done. (Id. at 4-8.) During his deposition, Dr. Solis stated that he performed an exploratory surgery and found multiple abscesses as well as a colon perforation the size of a coffee stirrer, among other things. (Docket 156-6 at 11-12.) Dr. Solis attempted to repair the perforation by introducing a T-tube to provide drainage. (Id. at 15.) At that point, the surgery changed from being a bile duct reconstruction to stopping the inflammation. (Id. at 16, lines 14-17.) After that first operation, Sanchez underwent three more surgeries. (Id. at 22.)

After falling into septic shock and due to his climbing bilirubin, Sanchez was taken in for a second surgery. (Id. at 25.) During that surgery, Dr. Solis found another abscess and a bile leak. (Id.) That is when Dr. Solis discovered that the T-tube had slipped and detached. (Id. at 21.) Two more surgeries were performed in an attempt to solve the bile leak. Nonetheless, on July 26, 2007, Sanchez expired. (Docket No. 1, ¶ 41.)

Plaintiff's expert witness in this case, Dr. Michael Wingate, is a general surgeon. On March 22, 2008, Dr. Wingate rendered an expert report to Plaintiffs which states that the treatment Dr. Solis provided to Sanchez fell below the standard of care. (Docket No. 137-2 at 4.) Specifically, he stated that: (1) "a careful history and physical exam was not properly taken and accurately transcribed;" (2) "detailed operative reports were not dictated;" and (3) "a leaking cystic dump stump should have been treated with wide drainage and bile duct decompression not a T-Tube. The T-tube placed by Dr. Solis eventually fell out, resulting in further leakage and morbidity." (Id. at 4.)  In his expert report, Dr. Wingate stated that the initial report was not final and he reserved the right to amend the report. (Id. at 7.)

During his first deposition, Dr. Wingate admitted that he did not include any conclusions pertaining to the causal relation between Dr. Solis's failure to place the wide drainage and the death

4

**Civil No. 08-1703 (GAG)**

of the patient. (Docket No. 137-3 at 6, lines 11-19.) However, he further admits that he was lacking information, specifically the operative notes, to elaborate on the causal relation. (Id. at 5).

In the amended expert report rendered on October 26, 2009, Dr. Wingate stated that Dr. Solis did not have the proper records or understanding of Sanchez's condition and was led to believe that Sanchez needed a bile duct reconstruction. (Docket No. 137-4 at 9.) He restated that the conduct of Dr. Solis fell below the standard of care, but, contrary to his initial report, made no mention of what type of drainage should have been placed. He only stated that "[t]he T-tube placed by Dr. Solis eventually fell out, resulting in further leakage and morbidity." (Id. at 10.)

During his second deposition, taken on December 28, 2009, Dr. Wingate admitted that he thought Dr. Solis was negligent in the management of Sanchez's case. (Docket No. 137-5 at 2, lines 12-15.) Notwithstanding, he further admits that he "[did not] think Dr. Solis caused mister Sanchez's death." (Id. at 2, lines 16-21.) This statement seems to contradict what he also stated during this second deposition to the effect that the complex bile reconstruction performed on Sanchez was a violation of the standard of care and "surely contributed to his death." (Docket No. 156-5 at 8, lines 20-24.) Dr. Wingate also stated in his deposition that when Sanchez "got to Auxilio Mutuo, he was going to die no matter what," only to later state that Sanchez had a chance of survival when he arrived at Auxilio Mutuo. (Docket 137-5 at 3, lines 3-5 and 22-24.)

**IV.   Discussion**

Defendant Dr. Solis moves for summary judgment on the ground that Plaintiff's expert witness failed to establish the causal relation between the physician's departure from the standard of care and the death of the patient. (Docket No. 135.) Considering the above mentioned facts, this court will address the applicable standards in malpractice suits.

In a diversity suit, Puerto Rico law is controlling. See Santiago v. Hosp. Cayetano Coll y Toste, 260 F. Supp. 2d 373, 380 (D.P.R. 2003). Article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31 § 5141, governs a physician's liability in a medical malpractice suit. Cortes-Irizarry v. Corporacion Insular de Seguros, 111 F.3d 184, 189 (1st Cir. 1997). Said article provides that "[a] person who by an act or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." P.R. Laws Ann. tit. 31, § 5141.

**Civil No. 08-1703 (GAG)**

Under this statute, three elements comprise a *prima facie* case of medical malpractice: "(1) the duty owed; (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and harm." Marcano v. Turabo Medical Center Partnership, 415 F.3d 162, 167 (1st Cir. 2005). Puerto Rico courts have held, with regards to the first element, that the duty owed to a patient is "[t]hat [level of care] which, recognizing modern means of communication and education, . . . meets the professional requirements generally acknowledged by the medical profession." Lama v. Borras, 16 F.3d 473, 478 (1st Cir. 1994) (quoting Oliveros v. Abreu, 101 D.P.R. 209, 226 (1973)). The third element, or causation, is established when plaintiff proves "that the physician's negligent conduct was the factor that most probably caused harm to [the patient]." Marcano, 415 F.3d at 168 citing Lama, 16 F.3d at 478.

Expert testimony is generally essential to "clarify the complex medical and scientific issues" that are prevalent in medical malpractice cases. Id. Moreover, at the summary judgment stage, expert testimony can be considered sufficient to allow the case to survive. See Henry v. Fisher, 2010 WL 1427354 (Del. Super.) (stating that the expert's opinion is sufficient enough to allow the plaintiff's [medical malpractice] case to survive summary judgment); Mason v. U.S., 2010 WL 1287144 (C.A.5 (Miss.)) (holding that district court did not err in granting summary judgment based solely on report filed by Plaintiff's expert medical witness.)

The facts, as supported by the record, show that the patient went to Dr. Solis for treatment and died subsequent to several surgeries performed by Dr. Solis. Based on these facts and the expert witness's report and deposition testimony, Plaintiffs have presented sufficient evidence to create an issue of material fact with regard to the question of causation. Therefore, the question of whether or not Dr. Solis contributed to the death of the patient must be submitted to the jury. See Cristopher v. Father Huddle's Café, Inc., 782 N.E.2d 517, 521 (2003) (stating that "issues of negligence and causation are most appropriately left to the jury").

Moreover, the contradictions in the expert testimony, pointed out by Defendant, are relevant to the issue of the expert's credibility which is an issue only a jury can decide. See Brown v. Wal-Mart Stores, Inc., 402 F. Supp. 2d 303, 308 (D.Me. 2005) (stating that "[a]s a general rule, the

**Civil No. 08-1703 (GAG)**

factual basis of an expert opinion goes to the credibility of the testimony"); <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 135 (stating that "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions").

**V.    Conclusion**

For the reasons stated herein, the court **DENIES** Dr. Solis' motion for summary judgment (Docket No. 135.)[1]

**SO ORDERED.**

In San Juan, Puerto Rico this 28th day of June, 2010.

*S/ Gustavo A. Gelpí*
GUSTAVO A. GELPI
United States District Judge

---

[1] The court, not withstanding its summary judgment ruling, however, counsels plaintiffs that the discrepancies in Dr. Wingate's testimony may ultimately prove fatal to their case when presented to the jury. Accordingly, plaintiffs should seriously attempt to settle this case.