IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

SANDRA MALDONADO MORALES, et al.,

    Plaintiffs,

v.

DR. JORGE NOYA MONAGAS, et al.

    Defendants.

CIVIL NO. 08-1703 (GAG)

**OPINION AND ORDER**

    Plaintiffs commenced this action against various defendants, including the appearing co-defendant Presbyterian Community Hospital ("PCH"), alleging medical malpractice, and seeking redress under Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit 31, §§ 5141 & 5142.

    Pending before this court is PCH's motion for summary judgment (Docket No. 140), Plaintiffs' opposition (Docket No. 152), PCH's reply to opposition (Docket No. 194), and Plaintiffs' sur-reply (Docket No. 203). After reviewing the filings and the applicable law, the court **GRANTS in part and DENIES in part** Co-Defendant's motion for summary judgment. (Docket No. 140.)

**I.     Standard of Review for Summary Judgment**

    Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'posses[es] the capacity to sway the outcome of the litigation under applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (citations omitted).

    The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case. Celotex, 477 U.S. at 325. The nonmoving party must then "set forth

**Civil No. 08-1703 (GAG)**

specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). If the court finds that some genuine factual issue remains, the resolution of which could affect the outcome of the case, then the court must deny summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party (here, the plaintiff) and give that party the benefit of any and all reasonable inferences. Id. at 255. Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence. Id. Summary judgment may be appropriate, however, if the non-moving party's case rests merely upon "conclusory allegations, improbable inferences, and unsupported speculation." Forestir Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

**II.     Relevant Facts**

The parties' summary judgment pleadings reveal the following uncontested material facts. Enrique Sanchez Vidal ("Sanchez") was referred to co-defendant Dr. Noya's private care by Dr. Wilfredo Pagani for a consultation regarding possible surgery since Sanchez had a problem with his gallbladder. (Docket No. 139-2 at 2.) Dr. Noya belongs to the medical faculty of PCH's surgery department with a specialty in general surgery since 1980. (Docket No. 139-3 at 15 and Docket No. 139-6 at 9, ¶ 22.) More specifically, Dr. Noya has been enjoying the clinical privilege of performing laparoscopic cholecystectomies at PCH since 1991 and has never been suspended nor revoked. (Docket No. 139-6 at 11, ¶¶ 32-33.)

All members of PCH's medical staff enjoy clinical privileges to provide medical care to patients at the hospital. (Docket No. 139-6 at 7, ¶ 17.) Said privileges are granted as part of the application process to become a member of the medical staff. (Id.) PCH has established specific criteria and procedures that its medical staff must abide by in order to be able to provide care to patients in the hospital. (Docket No. 139-5 at 2.) Furthermore, the privilege of a medical staff membership is only extended to "professionally competent physicians who continuously meet the qualifications, standards and requirements set forth in the hospital's Bylaws, Rules and Regulations." (Docket No. 139-6 at 2, ¶ 6.) An application for appointment to the medical staff "must contain a

**Civil No. 08-1703 (GAG)**

request for specific clinical privileges" and "is evaluated on the basis of the practitioner's licensure, relevant education, training and experience, demonstrated current competence and judgment, ability to perform the privileges requested, and participation in continuing education programs." (Id. at 7, ¶ 2.)

As an active member of the medical staff of PCH, Noya has never been an employee of the hospital and has never received salary from the hospital. (Id. at 11, ¶¶ 35-36.) The compensation he receives for being an active member of the medical staff and for enjoying clinical privileges is awarded by the medical insurance plans of the patients he attends to in PCH's facilities. (Id.)

On May 9, 2007, Dr. Noya met with Sanchez for an initial consultation where he was diagnosed with chronic inflammation of the gallbladder and an umbilical hernia. (Id. at 4.) Dr. Noya recommended to Sanchez the removal of his gallbladder by laparoscopy and the reparation of the umbilical hernia. (Id. at 5.) Sanchez consented to the procedure after being explained what it consisted of and its risks. (Id. at 6-7.) On May 15, 2007, the surgery was performed at PCH. (Id. at 7.)

According to the Plaintiffs' expert witness's report, following the surgery, Sanchez suffered from abdominal pain, fever and elevated amylase and bilirubin levels. (Docket No. 137-2 at 2.) Dr. Noya diagnosed the patient with pancreatitis. (Id.) After performing an abdominal ultrasound and two CT scans, Dr. Noya performed a second surgery where he found a large abscess and pancreatitis. (Id.) Since a subsequent CT scan revealed multiple fluid collections, Sanchez was taken to the operating room once more. During this third surgery, Dr. Noya found that the patient had a leaking cyst duct and inserted a feeding tube to act as a "stent." (Id.) On June 13, 2007, Dr. Noya performed a cholangiogram at the cystic duct insertion site and became aware of a bile leak. (Id.) Despite being aware of the leak, Dr. Noya did not treat it. (Id.) After this operation, Sanchez remained febrile and with elevated labs but Dr. Noya wrote on his progress notes that he was "clinically improved". (Id.) On June 20, the patient was in septic shock with a blood pressure of 90/50 and a heart rate of 125. (Id.) On June 27, 2007 Sanchez was transferred in catastrophic condition to Auxilio Mutuo Hospital where, after several surgeries, he eventually expired. (Docket No. 1.)

**Civil No. 08-1703 (GAG)**

III. **Discussion**

   *A.   Hospital's liability with regard to primary physician's actions*

Co-defendant alleges that Plaintiffs have failed to demonstrate sufficient evidence to create a material issue of fact with regard to the hospital's liability for the primary physician's alleged malpractice in the medical treatment provided to patient.

Under Puerto Rico law, a hospital can be held liable to its patients for malpractice when there has been negligence on the part of the hospital's employees. Marquez Vega v. Martinez Rosado, 116 P.R. Dec. 397, 405, 16 P.R. Offic. Trans. 487, 495 (1985). Thus, the hospital's liability is based on the vicarious liability doctrine. Id. Article 1803 of the Puerto Rico Civil Code governs the vicarious liability doctrine. Under said statute,

> [t]he obligation imposed by § 5141 of this title is demandable, not only for personal acts and omissions, but also for those of the persons for whom they should be responsible...Owners or directors of an establishment or enterprise are likewise liable for any damages caused by their employees in the service of the branches in which the latter are employed or on account of their duties.

P.R. Laws Ann. tit. 31, § 5142. However, when a physician is not employed by the hospital, but instead is granted the privilege of using the hospital's facilities for his or her private patients, the hospital should not be held liable for the exclusive negligence of an unsalaried physician, who was first and foremost entrusted with the patient's health. Marquez Vega, 116 P.R. Dec. at 408-409, 16 P.R. Offic. Trans. at 499.

In their opposition to PCH's motion for summary judgment, Plaintiffs aver that pursuant to Sagardia De Jesus v. Hospital Auxilio Mutuo, 2009 T.S.P.R. 173, PCH is liable for Dr. Noya's negligence. However, while such precedent offers guidance on the vicarious liability doctrine, it does not change the firmly established standard for determining a hospital's liability. Instead, Sagardia only holds that the hospital and the physician are jointly liable when a hospital enters into a contract with a franchise to provide special medical services, since the patient does not have the option of choosing a particular doctor or service. The holding in Sagardia is, thus, inapposite to the case at hand.

In the instant case, Dr. Noya was at all times in charge of the medical treatment provided to Sanchez. Moreover, Dr. Noya was entrusted with Sanchez's health when they met at Dr. Noya's

**Civil No. 08-1703 (GAG)**

private office. (Docket No. 139-6.) Furthermore, while he was hospitalized at PCH, Sanchez relied upon Dr. Noya for the diagnosis and treatment of his medical condition. Since Sanchez was a private patient, and was admitted as such to PCH, PCH is not vicariously liable for Dr. Noya's actions. In light of the vicarious liability doctrine and the applicable case law, Plaintiffs have failed to establish the hospital's liability. Therefore, co-defendant's motion for summary judgment is **GRANTED** and the hospital's liability claim with regard to Dr. Noya's negligence is hereby dismissed.

### B.   *Hospital's liability in relation to granting clinical privileges*

Co-defendant avers that contrary to Plaintiffs' assertion, PCH was not negligent in granting clinical privileges to Dr. Noya.

Under the "corporate negligence" doctrine, a hospital may be held liable for the negligent acts of physicians who have been granted the privilege of using hospital facilities for their private patients. Marquez Vega, 116 P.R. Dec. at 403, 16 P.R. Offic. Trans. at 494. Similarly, a hospital may be liable if it was "careless or imprudent in selecting the physician and granting him [privileges]." Id.

> Public policy dictates that even in this type of situations the hospital has the continuous obligation to protect the health of its patients by: (a) carefully selecting the physicians who, for some reason or another, are granted the privilege of using its facilities; (b) requiring that said physicians keep up-to-date through professional advancement studies; (c) monitoring the labor of said physicians and taking action, when possible, in the face of an obvious act of malpractice; (d) discontinuing the privilege granted in the face of the repeated or crass acts of malpractice on the part of one of those physicians; and (e) keeping reasonably up-to-date on current technological breakthroughs.

Id., 116 P.R. Dec. at 409-410, 16 P.R. Offic. Trans at 500. "A hospital that fails to follow such course of action is practically liable, by 'complicity,' for the malpractice act committed in its facilities by the physician against his private patient." Id., 116 P.R. Dec. at 410, 16 P.R. Offic. Trans. at 500-501. Moreover, "the duty to care for the patient not only corresponds to his physician, but to the hospital as well." Nuñez v. Cintron, 115 P.R. Dec. 598, 605, 15 P.R. Offic. Trans. 786, 796 (1984).

The uncontested facts of this case show that Sanchez Vidal was a private patient of Dr. Noya. (Docket No. 139-2 at 2.) Sanchez was operated at PCH, based on the recommendation made by Dr.

**Civil No. 08-1703 (GAG)**

Noya, since said hospital had granted him the privilege of using its facilities to treat his private patients. (Docket No. 139-6 at 5-7.) Sanchez was allegedly the victim of Dr. Noya's medical malpractice. Pursuant to the rule established in Marquez Vega, "a hospital is not liable for the exclusive negligent act of a non-staff physician with regard to his private patient unless the health-care institution had been negligent in granting him–and in maintaining–the privilege of using its facilities to treat private patients. . . ." Id., 116 P.R. Dec. at 412, 16 P.R. Offic. Trans. at 502.

PCH's bylaws establish the procedure for the application, appointment, renewal, and suspension of medical privileges to its medical staff, and provides that the privileges to the medical staff must be renewed every two years. (Docket No. 139-6 at 6, ¶ 15.) On this initial application, the candidate physician must submit written details regarding relevant training, current competence, professional references, and **involvement in any professional liability action**, among other things. (Id. at 4, ¶ 9) (emphasis added). Upon review of a candidate's application, a physician is initially appointed to the medical staff on a provisional basis for a period of twelve months. (Id. at 5, ¶ 13.) If a staff member desires reappointment, his or her professional performance, clinical skills, technical skills, compliance with continuing medical education, quality improvement, and professional ethics are taken into consideration, among other things. (Id. at 6, ¶ 16.) PCH granted Dr. Noya privileges to practice his specialty in laparoscopic cholecystectomies on September 19, 1991. (Docket No. 139-6 at 9, ¶ 25.) He has performed more than a thousand laparoscopic cholystectomies for the past 17 years. (Docket No. 139-2 at 8, ¶ 18.) Dr. Noya's clinical privilege to perform laparoscopic cholystectomy has never been suspended nor revoked. (Id. at 11, ¶ 33.)

Based on PCH's bylaws, in granting clinical privileges to Dr. Noya, the hospital must have considered any previous involvement in any professional liability action. Plaintiffs contend that Dr. Noya had been sued for medical malpractice on nine occasions. (Docket No. 158 at 2, ¶ 20.) Co-defendants, on the other hand, aver that Dr. Noya had only been sued on six occasions, including the present case. (Docket No. 139-3 at 12.) Failure to determine the number of times sued would constitute admissible evidence of the hospital's negligence in evaluating a physician for selection to the medical staff. The court understand that the hospital's knowledge of the existence of prior lawsuits is an essential factor in determining whether or not the hospital exercised reasonable care

**Civil No. 08-1703 (GAG)**

in granting a physician staff privileges. Marquez Vega, 116 P.R. Dec at 409-410, 16 P.R. Offic. Trans. at 500. (discontinuation of privilege in the face of a malpractice pattern is among hospital's responsibilities regarding protection of patients). See also Braden v. Saint Francis Hospital, 714 P.2d 505, 507 (1985).

The issue of whether Dr. Noya's previous medical malpractice lawsuits were taken into consideration by PCH when granting him clinical privileges is a question of fact better left to the jury. Therefore, the court **DENIES** co-defendant's motion for summary judgment as to Plaintiffs' claim regarding hospital's liability in granting clinical privileges.

### C.   *Nursing staff's alleged negligence*

Co-defendant moves for summary judgment on the ground that PCH's nursing staff is not vicariously liable for negligence in the care of Sanchez. More specifically, co-defendant avers that nurses complied with all medical orders and used the necessary degree of care to avoid causing unnecessary harm to the patient. (Docket No. 140 at 42.)

Plaintiffs, on the other hand, contend that PCH's nursing staff was negligent in failing to adequately keep, record and upgrade the medical records of Sanchez during his hospitalization and thus should be held vicariously liable under Article 1803. (Docket No. 127 at 12, ¶ 64.)[1]

As previously stated, under Article 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5142, a hospital can be held liable for its employee's negligent acts. For an Article 1803 claim to prosper in a medical malpractice case, Plaintiff would have to present sufficient evidence to prove all three elements of a *prima facie* medical malpractice case. That is, "(1) the duty owed; (2) an act or omission transgressing that duty; and (3) a sufficient causal nexus between the breach and harm." Marcano v. Turabo Medical Center Partnership, 415 F.3d 162, 167 (1st Cir. 2005).

Puerto Rico courts have explained the duty owed to a patient as that "level of care which, recognizing the modern means of communication and education, meets the professional requirements generally acknowledged by the medical profession." Otero v. United States, 428 F.

---

[1] Co-defendant, PCH, states in its motion for summary judgment that Plaintiffs also allege nurses negligence in allowing Sanchez to be fed solid food. However, this claim was not made on Plaintiffs' amended complaint and, as such, will not be considered by this court.

**Civil No. 08-1703 (GAG)**

Supp. 2d 34, 46 (D.P.R. 2006). "The standard is considered national and should generally be proven through expert testimony." Id.  As to the standard of care owed specifically by nurses, the Puerto Rico Supreme Court has held that "[a] nurse should exercise a certain standard of reasonable care to see that no unnecessary harm comes to the patient, and said standard of care must be the same as the standard of care exercised by other nurses in the locality or similar localities." Blas Toledo v. Hospital Nuestra Señora de la Guadalupe, 146  P.R. Dec. 267, 307, slip op. at 21 (1998) (citing Castro v. Municipality of Guanica, 87 P.R.R. 690, 693 (1963)). "Nurses. . . have the unavoidable duty to fulfill medical orders with the required urgency and in accordance with each patient's particular circumstances." Ponce v. Ashford Presbyterian Comm. Hosp., 189 F.R.D. 31, 33 (D.P.R. 1999).

In terms of the causation, under Puerto Rico law, a Plaintiff must prove by a preponderance of the evidence that the "negligent conduct was the factor that 'most probably' caused harm to plaintiff." Marcano, 415 F.3d at 168.  Causation usually cannot be found based on mere speculation and conjecture. Pages-Ramirez v. Hosp. Español Auxilio Mutuo, 547 F. Supp. 2d 141, 149 (D.P.R. 2008).  "Expert testimony is generally essential in order to clarify complicated medical issues that are more prevalent in medical malpractice cases than in standard negligence cases." Otero, 428 F. Supp. 2d at 46.

Co-defendant moves for summary judgment arguing that PCH's nurses merely complied with all the medical orders given by the various physicians who treated Sanchez. (Docket No. 140 at 42.) As such, co-defendant argues that PCH's nursing staff cannot be held jointly liable for any damages alleged by Plaintiffs.

Although nurses need to comply with a physician's orders, under Puerto Rico law, nurses are compelled to meet "certain independent standards of care." Pages-Ramirez, 547 F. Supp. 2d at 149. As previously mentioned, nurses must use a degree of care to avoid causing unnecessary harm to the patient. Blas Toledo, 146 D.P.R. at 307.  According to Plaintiffs' expert witness, Dr. Michael Wingate ("Dr. Wingate"), PCH's nurses did not depart from the standard of care, except on the day of Sanchez's transfer to Auxilio Mutuo Hospital. (Docket No. 139-10, at 22-23.)  Dr. Wingate stated in his amended report that  "due to [a] breach in the [standard of care] of proper record keeping

8

**Civil No. 08-1703 (GAG)**

which is directly supervised by the hospital, improper transfer to Hospital Auxilio and confusion set in." (Docket No. 137-4 at 9.) According to Dr. Wingate, it is the duty of a nurse to "prepare the proper documentation. . . so the receiving hospital can receive it." (Docket No. 139-10 at 23.) However, there is no indication on the medical record, nor did Dr. Wingate have any knowledge, as to who was responsible for the transfer notes. (Id.) Moreover, when asked who was responsible for the transfer summary, Dr. Wingate replied that the physician was responsible for producing it but that the charge nurse usually asks for it before the patient is released. (Id.)

Because there is an issue of fact as to who is responsible for the transfer sheet and what are the hospital's rules regarding verification of the transfer sheet, this court cannot conclude whether the nurses breached the standard of care. "In a medical malpractice case, issues of deviation from the medical standard of care are questions of fact that must be decided by the jury." See Cortes-Irizarry v. Corp. Insular de Seguros, 111 F. 3d 184, 189 (1st. Cir. 1997). This factual issue precludes summary judgment as to breach of duty of care by the hospital's nurses. Therefore, the court **DENIES** co-defendant's motion for summary judgment on this claim.

**IV.   Conclusion**

For the foregoing reasons, the court **GRANTS in part and DENIES in part** co-defendant's motion for summary judgment. (Docket No. 140.) The court hereby **GRANTS** PCH's motion for summary judgment with respect to hospital's liability for Dr. Noya's alleged negligence and **DENIES** summary judgment as to hospital's liability in granting clinical privileges and nursing staff's alleged negligence.

**SO ORDERED.**

In San Juan, Puerto Rico this 28th day of June, 2010.

*S/ Gustavo A. Gelpí*

GUSTAVO A. GELPI

United States District Judge