IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

SANDRA MALDONADO MORALES, et al.,

    Plaintiffs,

    v.

DR. JORGE NOYA MONAGAS, et al.,

    Defendants.

Civil No. 08-1703 (GAG)

**OPINION AND ORDER**

On July 7, 2010, Plaintiffs filed a motion for reconsideration (Docket No. 212) of the court's opinion and order (Docket No. 207) granting in part and denying in part Defendants' motion for summary judgment (Docket No. 140). After carefully reexamining the pertinent law, the court **GRANTS** Plaintiffs' motion for reconsideration (Docket No. 212).

In its opinion and order (Docket No. 207), the court found that Plaintiffs had failed to present sufficient evidence to establish PCH's liability. The court found that, in light of the vicarious liability doctrine, as established in Marquez Vega v. Martinez Rosado, 116 P.R. Dec. 397, 16 P.R. Offic. Trans. 487 (1985), the hospital could not be held liable for the exclusive negligence of an unsalaried physician with hospital privileges who was first and foremost entrusted with the patient's health. Thus, the court granted summary judgment on this ground.

Plaintiffs now move to reconsider the court's order regarding PCH's liability given the exception for obvious negligence established in Marquez Vega. (Docket No. 212 at 1.) In their motion for reconsideration, Plaintiffs argue that a physician's obvious acts of negligence could make a hospital jointly liable to plaintiffs. (Id. at 2) Furthermore, Plaintiffs aver that this court erred by not addressing whether the alleged failure of proper record keeping also made PCH jointly liable for Enrique Sanchez Vidal's death. (Id. at 8.)

**I.  Standard of Review**

Motions for reconsideration are generally considered under Fed.R.Civ.P. 59 or 60, depending

on the time such motion is served. <u>Perez-Perez v. Popular Leasing Rental, Inc.</u>, 993 F.2d 281, 284 (1st Cir. 1993). Whether under Rule 59 or Rule 60, a motion for reconsideration cannot be used as a vehicle to relitigate matters already litigated and decided by the court. <u>Villanueva-Mendez v. Vazquez</u>, 360 F.Supp. 2d 320, 322 (D.P.R. 2005). These motions are entertained by courts if they seek to correct manifest errors of law or fact, present newly discovered evidence, or when there is an intervening change in law. See <u>Rivera Surillo & Co. v. Falconer Glass. Indus. Inc.</u>, 37 F.3d 25, 29 (1st Cir. 1994) (citing <u>F.D.I.C. Ins. Co. v. World University, Inc.</u>, 978 F.2d 10, 16 (1st Cir. 1992); <u>Cherena v. Coors Brewing Co.</u>, 20 F. Supp. 2d 282, 286 (D .P.R. 1998)). Hence, this vehicle may not be used by the losing party "to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier." <u>National Metal Finishing Com. v. BarclaysAmerican/Commercial, Inc .</u>, 899 F.2d 119, 123 (1st Cir. 1990).

**II.     Relevant Factual Background**

Enrique Sanchez Vidal ("Sanchez Vidal") was referred to co-defendant Dr. Noya's private care by Dr. Wilfredo Pagani for a consultation regarding possible surgery since Sanchez Vidal had a problem with his gallbladder. (Docket No. 139-2 at 2.) Dr. Noya diagnosed Sanchez Vidal with chronic inflammation of the gallbladder and an umbilical hernia and recommended the removal of his gallbladder by laparoscopy and the reparation of the umbilical hernia. (Docket No. 139-6 at 4-5.) The surgery was performed at Presbyterian Community Hospital ("PCH") since Dr. Noya has clinical privileges at said hospital. (<u>Id.</u> at 7.) After several surgeries and complications arising from those surgeries, Sanchez Vidal expired. (Docket No. 1 at 7.)

**III.    Discussion**

     ***A.     Hospital's liability in light of Dr. Noya's alleged "obvious negligence"***

Plaintiffs move for reconsideration arguing that PCH is liable for having allowed a physician who holds privileges to use their facilities to commit obvious acts of negligence against a patient. After reviewing the applicable law and the parties' arguments on the pending motion, the court finds that it committed an error of law and reconsiders Plaintiffs' argument under <u>Marquez Vega</u> regarding PCH's liability for Dr. Noya's alleged "obvious negligence."

With regard to a hospital's liability towards its patients, the Puerto Rico Supreme Court has

held a hospital is liable to its patients for malpractice when there has been negligence on the part of the hospital's employees. Marquez Vega, 16 P.R. Offic. Trans. at 495.  However, when a physician is not an employee of the hospital, but is granted the privilege of using the hospital's facilities for his private patients, the situation is different.  When a patient goes directly to his or her physician's private office for care, agrees with him or her as to the care to be received, "and proceeds to a given hospital on the physician's recommendation merely because the doctor has admitted privileges at this hospital, the hospital cannot be held liable for the exclusive negligence of a non-employee doctor, who was first and foremost entrusted with the patient's health." Pages-Ramirez v. Hospital Espanol Auxilio Mutuo, 547 F. Supp. 2d 141, 151 (D.P.R. 2008) (citing Marquez Vega, 16 P.R. Offic. Trans. at 499). Nevertheless, in Marquez Vega the Supreme Court held that even under said circumstances, the hospital has the "continuous obligation to protect the health of its patients by. . . monitoring the labor of said physicians and taking action, when possible, in the face of an obvious act of malpractice". 16 P.R. Offic. Trans. at 500.  This is what Plaintiffs label as the Marquez Vega exception for "obvious negligence." Under this exception, "a hospital cannot turn its back once a physician is granted privileges there; rather, it has an obligation to maintain and enforce high standards of practice for the physicians granted the rights to use its facilities." Pages-Ramirez, 547 F. Supp. 2d at 151.

It is an uncontested fact that Dr. Noya was Sanchez's private physician with admitting privileges at PCH.  (Docket No. 139 at 7, ¶ 34.)  However, as previously mentioned, the sole fact that Dr. Noya benefitted from clinical privileges does not make him instantly liable.  "[T]he court must determine whether, in the face of allegedly obvious acts of negligence on behalf of Dr. Noya, [PCH] complied. . . in monitoring its physicians with privileges to ensure the health of its patients." Id. at 152.

Plaintiffs aver that Dr. Noya incurred in obvious acts of negligence such as: failing to diagnose and treat a bile leak, ordering the patient to be fed, failing to treat a patient in septic shock, perforating the colon and biliary duct, failing to treat a renal failure, and failing to properly treat a patient in catastrophic condition. (Docket No. 212 at 5-7.)  Moreover, Plaintiff's expert witness, Dr. Wingate, concluded that Dr. Noya's actions point towards a lack of basic surgical knowledge and

**Civil No. 08-1703 (GAG)**                                4

post-operative management in the care of a patient. (Id. at 7.) According to Plaintiffs, Dr. Noya's negligent treatment of Sanchez Vidal should have been "obvious" to the hospital's physicians and nurses. Therefore, in compliance with the standard of care, PCH should have intervened and investigated the crass negligence involving said mistreatment. (Id. at 8.)

With regard to Dr. Noya's obvious negligence, PCH merely contends that these facts are inadmissible as irrelevant since PCH cannot be held liable for the alleged negligence of Dr. Noya in the medical treatment provided to Sanchez Vidal. (Docket No. 184 at 35.) Because there is a genuine issue of material fact with regard to Dr. Noya's degree of alleged negligence, the determination of obvious negligence should be left to a jury. Suboh v. City of Revere, Mass., 141 F. Supp. 2d 124, 136 (D. Mass. 2001) ("[d]isputes regarding the degree of negligence are within the province of a jury.") Therefore, the court **GRANTS** Plaintiffs' motion for reconsideration and **DENIES** summary judgment with regard to the hospital's liability based on the obvious negligence exception.

### B.    *Hospital's liability in failing to enforce proper record keeping and peer review*

Plaintiffs also move for reconsideration on the ground that PCH is jointly liable for Sanchez Vidal's death since it failed to require Dr. Noya to provide proper record keeping. Plaintiffs aver that, according to the Puerto Rico Supreme Court, failure to keep proper records may lead to the inference that a hospital was negligent. See Blas Toledo v. Hospital Nuestra Senora de Guadalupe, 146 P.R. Dec. 267 (1998).

According to Plaintiffs, Dr. Noya's operative notes barely met the Joint Commission standards, as required. (Docket No. 158 at 32.) However, PCH, based on the deposition testimony of Dr. Lopez, contends that the operative notes did meet the requirements of the Joint Commission. (Docket No. 184 at 53.) With regard to the transfer note, Plaintiffs once again argue that Dr. Noya's transfer note barely met the Joint Commission standards. (Docket No. 158 at 32.) However, in his deposition testimony, Dr. Lopez first admits that the note should have been longer only to later state that it was adequate and exhaustive. (Docket No. 153-8 at 47-48.) Dr. Lopez's contradictory testimony is pertinent to the issue of the expert's credibility, which is an issue only a jury can decide. See Brown v. Wal-Mart Stores, Inc., 402 F. Supp. 2d 303, 308 (D.Me. 2005) (stating that "[a]s a

**Civil No. 08-1703 (GAG)**                               5

general rule, the factual basis of an expert opinion goes to the credibility of the testimony"); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 135 (2000) (stating that "credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions"). Therefore, the adequacy of the operative notes and the transfer note should be determined by a jury.

As to the issue of peer review, in his deposition testimony, Plaintiffs' expert witness testified that there was no record of a peer review of Dr. Noya during Sanchez Vidal's hospitalization at PCH. (Docket No. 158-6 at 10.) Notwithstanding, no evidence was presented to establish whether the lack of peer review caused Sanchez Vidal's death. In other words, the element of causation has not been established by Plaintiffs as required under Puerto Rico law in a medical malpractice case. As such, this court cannot determine, with the evidence presented at summary judgment stage, whether PCH's lack of peer review contributed to the death of Sanchez Vidal and whether lack thereof makes PCH jointly liable. Therefore, the court **DENIES** summary judgment on the issue of whether the hospital is liable for Sanchez Vidal's death due to lack of proper record keeping and peer review.

**IV.   Conclusion**

For the aforementioned reasons, the court **GRANTS** Defendants' motion for reconsideration (Docket No. 560) and therefore **DENIES** summary judgment on the issue of the hospital's liability regarding Dr. Noya's actions, that is, obvious negligence, and on the issue of whether the hospital is liable for Sanchez Vidal's death due to lack of proper record keeping and peer review.

**SO ORDERED.**

In San Juan, Puerto Rico this 23rd day of July, 2010.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPI

United States District Judge